**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| Jorge Alejandro Rojas, | Case No. 2:23-cv-12140-LVP-EAS |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| DV Injury Law PLLC, Venar Raad Ayar, and Daniel P. Heilbrun, | |
| Defendants. | |
| ***And Associated Counterclaims and Third Party Claims.*** | |

### JOINT 26(f) REPORT AND DISCOVERY PLAN (WITH DEFENDANTS' INPUT)

The three attorneys met by phone and conferred on December 22, 2023. In accordance with the Court's order of December 19, 2023 (ECF No. 19), Mr. Perrong emailed a proposed plan to Mr. Teicher on Thursday, January 11, 2023 at 9:11 p.m. The next morning Mr. Teicher called Mr. Perrong that he was traveling out of the county with family, including his two small grandchildren, and was and would be unable to include his portion until Tuesday afternoon and that Monday was a Federal Holiday. Instead of working together, Perrong accused Teicher was refusing to cooperate and that Perrong would report Teicher to the Court as such. Teicher was able to make a call to the Court and explain the situation and that his portion would be filed Tuesday. In fact Teicher's return planes ran very late due to severe weather.

*Background of the Action*

Plaintiff claims that the Defendants called his private telephone number 424-XXX-XXXX from the telephone number 331-216-0496 with a prerecorded message and was provided a callback number of 248-237-4058 at least on August 4, 2023. The Plaintiff contends that there

may be other calls from the Defendants. The Plaintiff was transferred from a pre-recorded message to an agent of the Defendants, "Elizabeth," who told him on the August 4 call that the caller was from Defendants and attempted to solicit the Plaintiff for representation in Roundup weed killer litigation claims. The calls were unsolicited. Based on these allegations, the Plaintiff brought this for violations of the TCPA, as the calls were made to his call phone number with a prerecorded message, conduct which is prohibited by the TCPA. The Plaintiff seeks the maximum statutory relief under the TCPA for any violations during the calls. Defendants believe the maximum statutory relief, if Plaintiff defeats a motion for summary disposition, is $500.

As a result of this lawsuit, Defendants have asserted class action counterclaims against Plaintiff for fraud, abuse of process, defamation, and a RICO conspiracy. As part of their ever-shifting narrative, Defendants originally asserted that the Plaintiff conspired with third-party defendant "Mark Dombrowski" to "submit[] their phone number as leads," including with the name "Aaron Heering." During the 26(f) conference, counsel for the Plaintiff averred that Mr. Rojas never had any communication with or had ever spoken with these individuals. In response, counsel for the Defendants stated that that would change matters and would render the case a "different story." As a result of this conversation, Defendants appear to have abandoned these claims against "Mark Dombrowski" entirely and instead asserted claims against "Mark Nowicki" in their latest filings. Defendants' latest filings include a "Mark Nowicki" on the pleading page – instead of a Mark Dombrowski. Plaintiff likewise has no clue who "Mark Nowicki" is, let alone spoken with him.

The factual issues in both the affirmative claims and the counterclaims include, but are not limited to, how many telephone calls the Defendants placed to the Plaintiff, the Defendants' marketing practices, including through telemarketing, the content of those calls, and the extent to

which, if any, the Plaintiff has ever associated with, spoken with, or knows "Mark

Dombrowski," "Aaron Heering," "Mark Nowicki," and/or Matthew Malkowski. The factual

issues also will surround the nature of the telephone system used to place calls in this case,

including its use of prerecorded voices, together with the unusually cozy relationship between

the Defendants and their telephone service provider, Talk IT Pro, and computer service provider,

Bezalu, both of which are owned by Malkowski and are in the same building as Defendants. The

factual issues also include information contained in the Plaintiff's phone records for

communications with the alleged co-conspirator and his whereabouts at the times of the alleged

predicate acts, defamatory statements, and acts in furtherance of the alleged conspiracy.

The ESI in this case will surround the Defendants' telephone records, including if they

called or have leads in any of the aforementioned individuals' names, as alleged in their

counterclaim. As for legal issues, the Plaintiff will need to demonstrate that the Defendants'

conduct violates the TCPA, and the Defendants will need to demonstrate, with particularity, the

exact allegedly fraudulent conduct committed by the Plaintiff, how the Plaintiff has engaged in

abuse of process, how the Plaintiff has defamed the Defendants, including specifically pleading

the content of said defamatory communications and how they constitute defamation under

applicable law, as well as the legal elements of a RICO conspiracy, including the existence of

one or more predicate acts in concert with one or more co-conspirators. Defendants also bring

class action claims against Plaintiff, which Plaintiff disputes. Furthermore, Plaintiff believes

Defendants will be unable to meet FED. R. CIV. P. 23's legal requirements.

In response, Defendants state the Plaintiff himself sought out a leed vendor website

which dealt with using the weed killer Round Up and later developing cancer, where

Plaintiff answered questions about him or a family member's potential claims for toxic torts. Included in that information was that Plaintiff provided his name was Aaron Heering or Herringa. Aaron Heeringa lives in the Chicago area and Mr. Herringa has stated that his name has been used numerous times in the manner described here – to solicit entities to call when in fact the true caller is on the Do Not Call list. Included in Plaintiff's online interactions with the leed vender, Plaintiff answered yes to "By clicking yes I expressly authorized DV Injury Law, NWCC and Heilburn Law to deliver or cause to be delivered emails, telemarketing calls, prerecorded messages and SMS text messages regarding their products and services using an automatic telephone dialing system or an artificial or prerecorded voice to me at the email and/or telephone number I provided even if the number is a mobile number or on a State of Federal Do Not Call and/or Do Not Email registry. I understand that I am not required to give my consent as a condition of purchasing any property, goods or services." Once he consented, as required by law, one call was made to the number Plaintiff provided. The person who made that one call used queues to three or four pre-recorded qualifying questions. For any answer not appropriate that person would have pushed the queue thanking the Plaintiff and thanking and ending the call. One question was if the Plaintiff had used the weed Killer Round Up and then had cancer. Plaintiff answered yes. With the Plaintiff answering the qualifying questions, that person transferred the Plaintiff to a live Intake Specialist, in this case Elizabeth. During this conversation Plaintiff identified again himself as Aaron and that his father had cancer. Elizabeth asked Plaintiff what kind of what cancer and Plaintiff responded his father had prostate cancer, to which Elizabeth responded that prostate cancer does not qualify him for the Round Up claim. Plaintiff then stated his father had another cancer, but did know how to pronounce it. Elizabeth asked if his father had lived at Camp LeJeune and Plaintiff answered yes, so Elizabeth told him

4

only lymphoma and leukemia could qualify his father. Plaintiff then stated it was lymphoma, that he had Power of Attorney, and Plaintiff requested Elizabeth email him information. Plaintiff provided Elizabeth his email address. This was the one and only call between the parties. It is understood that a Mark Dombrowski of Chicago has assisted the Plaintiff in this and other like endeavors. The name Mark Nowicki was in error and should have been Mark Dombrowski. The Cook County Sheriff has been and currently is trying to serve Mr. Mark Dombrowski, but thus far Mr. Dombrowski has avoided service.

The Plaintiff and Mark Dombrowski have used this scheme to improperly demand funds on the basis of TCPA violations. These entities and persons will form the class of the Counterclaim.

*Proposed Discovery Plan*

Although the Plaintiff requests less, Defendants respectfully request they be provided until June 15 to join parties or amend their respective answer, counterclaim and class. Defendants propose discovery to conclude October 15, 2024. The Defendants may need to seek an expert to analyze the telephone systems at issue and another expert depending on how the counterclaims proceed, and if so, the Defendants propose that he be given until July 31, 2024 to designate such experts, with expert discovery to close on September 30, 2024.

Although Plaintiff requests no changes to the limits to discovery imposed by the Federal Rules of Civil Procedure at this time, Defendants believe it is necessary to modify the limits outlined in the Federal Rules of Civil Procedure as to both interrogatories and depositions. The Defendants request leave to serve 400 interrogatories for each the complaint and counterclaim. The Defendants also request leave to take more than 50 depositions depending on the size of the class, but do not yet know who the exact additional deposed parties will be. Plaintiff does not

believe the scope of this case requires the limits be exceeded and expressly objected to the

Defendants' request as patently abusive.

The Plaintiff requests that he be provided until July 31 to file dispositive motions, but

Defendants believe until August 30 is appropriate. Plaintiff stated he will be ready for trial

shortly thereafter, preferably in September or October. Each side will require approximately

between a week to 10 days total to present their respective cases-in-chief. Defendants believe the

case will be ready for trial in January or February.

*Existing / Anticipated Discovery Disputes and Dispositive Motions*

The Plaintiff has served discovery on the Defendants and is awaiting a response. In

addition, the Plaintiff has served subpoenas on Defendants' telephone service provider, Talk IT

Pro, LLC, seeking Defendants' calling records. The Defendants filed a motion to quash and

motion for protective order (ECF No. 22), to which the Plaintiff has filed a response (ECF No.

23) and is accordingly ripe for disposition. Plaintiff also wishes to bring to the Court's attention

that the Defendants' telephone service provider, Talk IT Pro, LLC, which operates in the same

building as Defendants and about which Defendant Ayar posted a Google review saying that

they are "not your typical phone company," has suspiciously objected to the subpoena served

upon them on nearly identical grounds to the Defendants' motion to quash. In the event Plaintiff

is unable to resolve these objections with Talk IT Pro informally, the Plaintiff intends to amend

the complaint to add Talk IT Pro and Mr. Malkowski as Defendants, seek a court order

compelling production, or both. The Plaintiff intends to seek summary judgment on both his

affirmative claims and counterclaims.

Defendants position is that Plaintiff's subpoenas are inappropriate for the reasons stated

in the motion. Talk It Pro and the Defendants are separate legal entities. Talk It Pro is a VoIP

service provider, as are many, many companies. Although they do some business together and are in the same building complex, they are independent businesses.

RESPECTFULLY SUBMITTED AND DATED this January 16, 2024.

/s/ Mark L. Teicher
Mark L. Teicher (P34301)
Attorney for Defendants/
Counter-Defendants/
Third-Party Defendants